FILED
SUPERIOR COURT
OF GUAM

2021 APR 29 PM 4: 14

CLERK OF COURT
BY._____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| ALLAIN RODRIGUEZ,<br><br>Plaintiff,<br><br>vs.<br><br>MARY CONCEPCION RODRIGUEZ,<br><br>Defendant. | **Superior Court Case No. <u>DM0066-20</u>**<br><br>**DECISION AND ORDER RE MOTIONS FOR CONTEMPT AND MODIFICATION OF CHILD SUPPORT AND CUSTODY** |

Following the granting of the parties' annulment, Plaintiff Allain Rodriguez asks the Court to find Defendant Mary Concepcion Rodriguez nka Mary Manibusan in contempt of Court for failing to comply with their Marital Settlement Agreement ("MSA") when she unilaterally changed their daughter's name. In response, Mary also moved for a finding of contempt. Mary argues that Allain failed to comply with the MSA by not delivering a vehicle to her in Guam as required in the MSA's Addendum. She also seeks a modification of the parties' custodial arrangements and child support.

The Court held an evidentiary hearing on the Motions on March 12, 2021. Having considered the parties' arguments and evidence and the applicable laws and regulations, the Court GRANTS Allain's Motion for Contempt and DENIES Mary's Motion for Contempt. The Court also DENIES Mary's motion to modify the joint legal custody arrangement. However, the Court also finds that the provision in Paragraph 1 of the Addendum reducing Allain's child support obligation is void and ORDERS child support to be reverted to the amounts stated in the MSA, thereby GRANTING Mary's Motion for Modification of Child Support.

ORIGINAL

## I.  PROCEDURAL AND FACTUAL HISTORY

Allain initiated this matter by filing a complaint for an annulment.  The parties resolved

the dispute through a marital settlement agreement.  Under the MSA, the parties agreed to share

joint legal custody of their two minor children, L.R. (born Oct. 14, 2018) and C.R. (born Jan. 13,

2020).  The parties also agreed that Mary would have primary physical custody due to Allain's

unaccompanied tour of duty in South Korea with the U.S. Army.  Allain reserved the right to

request the custody of the children and retains visitation rights when he is on Guam.  Allain also

agreed to pay Mary child support of $1500 per month ($750 per month per child).

However, in Addendum, the parties altered the child support obligation:

> Husband will transfer to Wife the 2003 Honda Pilot SUV Vin no.
> 2HKYF18703H616653.  She will take this SUV and transfer the title to her name,
> and also provide insurance.  In consideration of her receiving this SUV, child
> support will be Reduced to $1200 per month ($6oo per month per child).

Compl., Ex. A, Addendum (Feb. 11, 2020).

After the annulment proceedings ended, Mary filed an amended certificate of live birth

with the Department of Public Health and Social Services (DPHSS), changing C.R.'s name.  In

response, Allain asked the Court to hold Mary in contempt for changing C.R.'s name and

requests an order to restore C.R.'s original name immediately.  Allain also seeks attorney fees

and costs.

Mary responded by filing a motion for a finding of contempt, asking the Court to hold

Allain in contempt for failing to deliver to her actual possession of the Honda Pilot in Guam.

Mary also filed a motion to modify custody and support; she asks the Court to modify the

parties' agreement regarding child support to conform with the higher of the Guam Support

Guidelines or the military dependent pay.  Mary also seeks full legal custody of L.R. and C.R.

At the March 12, 2021 hearing, Allain testified that:

ORIGINAL

1. He is on active duty in South Korea.

2. He wants his daughter's name restored and never agreed to the name change.

3. He received messages from Mary about the name change, including a long string of texts from her such as "I'm doing it so our [MSA] is going to be invalid due to the children you claim doesn't exist;" "[C.R.] is not going to exist;" "Call Texas and since our marriage was never legal cause you annulled it I'm changing [L.R.'s] name and last name;" "I'm removing you from their birth certificate cause you annulled the marriage; "She's getting a new name for all you know it's . . . a name you can't pronounce. . . ." Ex. 5.

4. He understood that Mary intended to relocate from Guam to Texas.

5. On August 19, 2020, Allain's attorney sent Mary a letter informing her that the vehicle was in Texas at the residence of Allain's agent, Joe Nguyen. The letter also enclosed the key and the Certificate of Title from Missouri where it was purchased. Ex. 3.

6. The letter further stated that "child support will be reduced from $1500 to $1200 a month starting next month, September, 2020." Ex. 3. Allain then stopped paying the higher level of child support in September 2020.

7. The Addendum did not specify how long child support would be reduced, but he expected it to be a permanent modification.

Mary testified that:

1. She informed Allain that she would change C.R.'s name, and he never objected. Instead, he laughed and said, "go ahead."

ORIGINAL

2. Mary's agent collected the vehicle in Texas. She tried to register it there but could not as a non-resident.

3. The vehicle's registration is now expired. It cannot be registered in Guam unless it is shipped here.

## II. LAW AND DISCUSSION

### A. Motions for Contempt

A divorce decree incorporating a settlement agreement is simply a consent decree and a consent decree is a form of contract. *Leon Guerrero v. Moylan*, 2000 Guam 28 ¶ 8. "It is approved on its face by a court presumably not privy to the details of the negotiation, or the parties' subjective intentions; it is then incorporated in a judicial order; and it is ultimately backed up by the court's power of contempt." *Id.*

Under 7 GCA § 34101(a)(5), contempt of Court includes "[d]isobedience of any lawful judgment, order, or process of the court." An individual found in contempt "is subject to the same penalties as a person found guilty of a petty misdemeanor." 7 GCA § 34101(b). The Court also notes that, in punishing for contempt, it has the power to compel obedience to his or her lawful orders. 7 GCA § 7112; *see also* 7 GCA § 7111(b).

### 1. Mary committed contempt when she changed C.R.'s name.

Under the MSA, the parties agreed to a joint legal custody arrangement for their two children, L.R. and C.R. The Supreme Court of Guam defines joint legal custody as "the right and obligation to make long range decisions involving education, religious training, discipline, medical care, and other matters of major significance concerning the child's life and welfare." *Howerton v. Howerton*, 2004 Guam 8 ¶ 12.

ORIGINAL

Title 26 GAR § 2111(d) provides the procedures for changing a given name. Since C.R.'s name change occurred prior to her first birthday, the regulation requires the written request of both parents. 26 GAR § 2111(d). The requirement that both parents must make a written request for a name change indicates that the decision to do so falls under the rights and obligations of joint legal custody.

Mary contends the language of the MSA is vague and not sufficiently specific as to how the joint legal custody is to be applied. Given Allain's deployment, she questions whether each parent can exercise legal custody independently of the other during their period of physical custody.

While physical custody permits the custodial parent "to make the day-to-day decisions required during the time the child is actually with the parent having such custody," *Howerton*, 2004 Guam 8 ¶ 13, joint legal custody does not vest the custodial parent with the right to make unilateral decisions. Rather, "[j]oint legal custody means that both parents have an equal voice in making decisions . . . [of major significance concerning the child's life and welfare] and neither parent's rights are superior to the other." *Id.* ¶ 12.

Here, the language of the MSA demonstrates that the parties agreed to share joint legal custody. Moreover, the MSA specifically addresses physical custody: it grants Mary full physical custody and reserves Allain's right to request custody if and when he should return from active duty. Unlike physical custody, joint legal custody may be exercised by a parent on active duty. The Court does not find that any further specificity was required.

Mary also claims that messages between Allain and herself regarding the name change demonstrate that Allain did not express disagreement or surprise by the act. She also asserts that Allain consented to the action by way of his intent to alter his records with the Army to reflect

ORIGINAL

the name change of his dependant, C.R. Whether Plaintiff acquiesced or consented by silence, however, is not the issue. The statute requires both parents' written consent. Since it is undisputed that Allain did not provide written consent, the name change is invalid.

The Court also notes that messages sent by Mary to Allain indicate bad faith. For instance, on June 13, 2020, Mary messaged Allain that she was changing C.R.'s name, "so our marriage settlement agreement is going to be invalid due to the children you claim doesn't exist." Ex. 5. Later the same day, she messaged Allain that the "[m]arriage settlement agreement doesn't exist cause you will have to draw up a new one with the kids new name." *Id.* She then threatened to create a new name that cannot be pronounced.

Based on Mary's act of unilaterally changing C.R.'s name, the Court finds that, in doing so, she violated the express terms of the MSA. Accordingly, the Court GRANTS Allain's motion and finds Mary in contempt of Court. As part of the remedy for the contempt, the Court ORDERS Mary to immediately restore C.R.'s name to her original name and obtain a corrected birth certificate.

Allain also requests attorney's fees in association with his Motion for Order to Show Cause. Under the MSA, "[s]hould either party be required to seek enforcement of this Agreement by the Court if one party has violated the AGREEMENT, the prevailing party is entitled to a reasonable attorney fee from the no prevailing party." Compl., Ex. A. Having found that Mary violated the MSA when she unilaterally changed C.R.'s name, the Court GRANTS Allain's request for attorney fees.

### 2.   Allain did not commit contempt in the course of transferring the vehicle.

The parties disagree as to whether the Addendum's phrase "Husband will transfer to Wife the 2003 Honda Pilot . . . She will take this SUV and transfer the title to her name" required

ORIGINAL

Allain to ship the vehicle to Guam and/or ensure that she personally had use and possession. Allain argues that he satisfied his obligation when he transferred the title and a set of keys to Mary and when her agents retrieved the vehicle in Texas. Mary claims that Allain is required to transfer the car to her possession on Guam. Def. Reply (Jan. 20, 2021). For support, she cites that the agreement was made in Guam; she had been in Guam for an extended period and has no ties to Texas; and that the registration and keys were delivered to her in Guam. *Id.*

The Supreme Court of Guam instructs that "contract principles apply to the interpretation of settlement agreements." *Leon Guerrero*, 2000 Guam 28 ¶ 8. When interpreting contracts, the Court must give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful. *Id.* (citing 18 GCA § 87102). Accordingly, "when a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible." *Id.* (citing *Camacho v. Camacho*, 1997 Guam 5 ¶ 32).

Upon examining the provision at issue in this case, it is clear that the mutual intent of the parties was for Allain to transfer the vehicle to Mary. Once transferred, Mary's obligation was then to transfer the title to her name. Under Guam law, transfer--in the context of personal property--is defined as "an act of the parties, or of the law, by which the title to property is conveyed from one living person to another." 19 GCA § 40101; *see also* 18 GCA §§ 87110 and 87111.

Here, it is undisputed that the title to the vehicle was transferred to Mary, and the car was turned over to her agents. Nothing in the Addendum refers to delivering the vehicle to Mary's possession, whether in Guam or Texas. Without any language requiring delivery in a specific location, the Court finds that the delivery to Mary's agents in Texas, and his delivery of keys and


ORIGINAL

a Certificate of Title, satisfied his contractual obligation. Accordingly, the Court DENIES

Mary's Motion for Contempt.

**B. Mary's Motion to Modify Child Support.**

Mary asks that child support be modified on the basis that the Honda Pilot constitutes

insufficient consideration for an infinite period. Specifically, she points to the value of the

vehicle, which is valued at around or less than $3,177. She also argues that she cannot use it to

support the children without actual possession of the car. Def. Opp. (Nov. 25, 2020). She seeks

a modification of support to conform with the higher of the Guam Support Guidelines or the

military dependent pay Plaintiff receives.

Guam law permits the Superior Court of Guam the "authority to modify any order,

award, stipulation, or agreement as to child support (whether or not merged or integrated into a

decree of divorce or separation) upon a showing of substantial and material change of

circumstances." *Lanser v. Lanser*, 2003 Guam 14 (citing 5 GCA § 34121). The moving party

bears the burden to establish a substantial and material change of circumstances. *Id.* (citations

omitted). "It is error to change the amount of support where there is no evidence submitted to

show a change in circumstances." *Id.* (citations omitted).

Child support is not meant for the benefit of the parent, rather "the primary purpose of the

court in setting child support is to protect the welfare of children." *Guerrero v. Moylan*, 2002

Guam 18 at ¶ 27 (citing *Tammen v. Tammen,* 182 N.W.2d 840, 842 (Minn. 1970)). Furthermore,

the Court notes that:

> While contract principles are applied to settlement agreements, courts are
> unanimous in concluding that parents cannot by agreement limit or divest a court
> of its discretion in setting child support . . . . A child's right to support from his or
> her parents is a right belonging to the child, and cannot be contracted away by his


ORIGINAL

or her parents . . . . An agreement purporting to limit the court's ability to achieve that goal is void as against public policy . . .

*Id.* at ¶ 24.

The parties agreed: "In consideration of her receiving this SUV, child support will be Reduced to $1200 per month ($600 per month per child)." Compl., Ex. A, Addendum. While the provision does not mention the children, the Court interprets the consideration to mean they will receive a collateral benefit from the use of the vehicle. The record, however, indicates that the benefit is far outweighed by that received by Allain.

In order for the vehicle to be used for the children's benefit, Mary will have to incur the expenses of registering it in Texas and shipping it to Guam. Moreover, according to Allain's own submissions, the vehicle is in need of repairs. Ex. 4.[1] Considering that the vehicle is valued at or less than $3,177, the total cost required before the children may benefit from its use will likely exceed its value. Comparatively, when calculated from September 2020 until the age of maturity of J.R. and C.R., Allain's total child support obligation is reduced by approximately $119,400.00.[2]

Based on the tenuous benefit that the children receive from the consideration in Paragraph 1 in the Addendum compared with the amount of child support given up in return, the Court finds, as a matter of public policy, that the last sentence in Paragraph 1 of the Addendum is void. *Id.* The Court further ORDERS that Allain's child support obligation shall be reverted back to $1500 per month ($750 per month per child), retroactive to September 2020.

---

[1] Mary objects to the admissibility of Exhibit 4 which consists of text messages. The Court took the admissibility of Exhibit 4 under advisement at the hearing. The Court now rules that Exhibit 4 is unauthenticated and inadmissible. However, in this particular instance, Exhibit 4 supports Mary's position that the vehicle requires repair.

[2] When the Court issued the Judgment of Annulment of Void Marriage, J.R. was eighteen months old and C.R. was four months old. Based on an age of maturity of eighteen years for the children, Allain is obligated to pay child support for J.R. for an additional 192 months and 206 months for C.R., for a total of 398 months. The reduction in child support equals $150 per month per child, or a total of $300 per month. $300 of support per month for 398 months totals $119,400.

ORIGINAL

### C. Mary's motion to modify custody.

Mary also requests the Court to modify the joint-legal custody arrangement the parties agreed to in the MSA. She seeks an award of full legal custody.

A court may modify a custody arrangement whenever "the best interests of the child require or justify such modification." 19 GCA § 8404(a)(6); *Lanser*, 2003 Guam 14 ¶ 9. "[T]o justify ordering a change in custody there must generally be a persuasive showing of changed circumstances affecting the child." *Lanser*, 2003 Guam 14 ¶ 9 n.2 (citing *In re Marriage of Carney*, 598 P.2d 36, 38 (Cal. 1979)).

Mary has not provided any evidence indicating that the circumstances have not sufficiently changed to justify modifying the present custodial arrangement. Accordingly, the Court DENIES her motion to modify the present custodial arrangement.

## III. CONCLUSION

In summary, the Court GRANTS Allain's Motion and finds Mary in Contempt of Court. For relief, the Court ORDERS Mary to immediately restore C.R.'s name to her original name and obtain and provide to Allain a corrected birth certificate. The Court also GRANTS Allain's request for attorney fees incurred in bringing the motion for contempt. Allain may provide a statement of fees and costs within 28 days of this Decision and Order, and Mary may file any response as to the reasonableness of such fees 14 days thereafter.

Finally, the Court DENIES Mary's Motion for Contempt and Motion for Modification of Custody. However, the Court finds that the last sentence in Paragraph 1 of the Addendum is void and ORDERS that Allain's child support obligation shall be reverted back to $1,500 per month ($750 per month per child), retroactive to September 2020.

ORIGINAL

SO ORDERED this 29th day of April 2021.

_____
**HON. ELYZE M. IRIARTE**
**Judge, Superior Court of Guam**

Appearing Parties:
Plaintiff Allain Rodriguez, self-represented[3]
Defendant Mary Concepcion Rodriguez nka Mary Manibusan, self-represented[4]

---

[3] Represented by Seaton M. Woodley, III, Esq. at the hearing.
[4] Represented by Curtis Van de veld, Esq., The Van de veld Law Offices, P.C. at the hearing.